IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSHUA A. GRIMM,                                    )
        Plaintiff,                                )
                                      )
        vs.                                       )   Civil Action No. 05-1050
                                      )   Judge Lancaster
CITY OF UNIONTOWN, UNIONTOWN          )   Magistrate Judge Mitchell
POLICE DEPARTMENT, CHIEF OF           )
POLICE KYLE SNEDDON, both             )
individually and as Chief of Police for the   )
City of Uniontown, OFFICER JONATHAN  )
GRABIAK, both individually and as a   )
police officer for the City of Uniontown,   )
and OFFICER MICHAEL GARROW, both    )
individually and as a police officer for the   )
City of Uniontown,                    )
        Defendants.                               )
                                        )

REPORT AND RECOMMENDATION

I.     Recommendation

       It is respectfully recommended that the motion for partial judgment on the pleadings

submitted on behalf of Plaintiff (Docket No. 11) be denied.

II.    Report

       Plaintiff, Joshua A. Grimm, a Captain employed with the United States Army, brings this

civil rights action against Defendants, the City of Uniontown, its police department, the chief of

police (Kyle Sneddon) and two police officers (Jonathan Grabiak and Michael Garrow), arising

out of events that occurred on August 7-8, 2004, when he was arrested outside a social

establishment.  He states that, by arresting him and placing a phone call to his battalion

commander and saying that he was being charged with public intoxication and disorderly conduct

(charges which were withdrawn almost immediately after they were filed), the Defendants caused

the following events to occur: he received a formal administrative reprimand; was permanently relieved of his position as Commander of Bravo Company; was forced to sign in and out on a daily basis and provide appointment slips or proof of appointments to account for his whereabouts; was assigned humiliating and degrading tasks; and was denied career-advancing opportunities including promotions and transfers.

He alleges that the Defendants' actions violated his rights under the First Amendment (free speech and the right to be free from retaliation for exercising constitutionally protected rights), Fifth Amendment (exercising his right to remain silent) and Fourteenth Amendment (procedural and substantive due process).  In addition to his civil rights claims, he also alleges claims for intentional infliction of emotional distress, tortious interference with a business contract, negligence, gross negligence, negligent hiring/training/supervision and retention under the laws of the Commonwealth of Pennsylvania, as well as violations of certain rights guaranteed under the Pennsylvania Constitution.  In an amended complaint filed on March 26, 2007, Plaintiff adds a claim for abuse of process under Pennsylvania law.

Presently before this Court for disposition is a motion for partial judgment on the pleadings, filed on behalf of the Plaintiff.  He contends that Defendants have admitted all the elements of and seeks judgment in his favor on his federal claims of procedural due process and substantive due process and his state law claim of abuse of process (and possibly his state law claim of procedural due process).  For the reasons that follow, the motion should be denied.

2

Facts[1]

After attending a wedding reception in the Uniontown area during the evening hours of August 7, 2004, Plaintiff, accompanied by close friends and family, socialized at an establishment known as the Mount Vernon Inn located at 180 West Main Street in Uniontown, Pennsylvania.  Plaintiff and his party were standing in the parking lot in the early morning hours of August 8, 2004 when officers from the Uniontown Police Department arrived and instructed all of them to leave.  (Compl. ¶¶ 13-14.)

Plaintiff was concerned about his misplaced dress uniform jacket, which had significant sentimental as well as financial value, and he remained in the parking lot of the Mount Vernon Inn.  He was arrested by officers of the Uniontown Police Department, including but not limited to Defendants Jonathan Grabiak and Michael Garrow, and was charged with public intoxication and disorderly conduct.  Mount Vernon Inn did not press charges against Plaintiff, and both the manager of the Mount Vernon Inn and the manager/head of security signed statements that "this was a minor situation that was unfortunately blown way out of proportion."  (Compl. ¶¶ 15-18.)

Plaintiff requested a blood alcohol test to show that he was not intoxicated and the police refused his request.  (Compl. ¶ 19.)  He also alleges that, "[u]pon questioning by Defendant Grabiak at Uniontown Police station, [he] exercised certain constitutionally protected right[s], including but not limited to his First Amendment rights [sic] to free speech and his Fifth Amendment right to remain silent."  (Compl. ¶ 20.)  He indicates that Defendants retaliated

---

[1]     These factual allegations are taken from the original complaint, filed on August 7, 2006 (Docket No. 1).  On March 26, 2007, Plaintiff filed an amended complaint (Docket No. 16), which adds additional factual allegations.  However, the motion for partial judgment on the pleadings was filed on February 20, 2007 and it applies to the original complaint.

against him for exercising these rights as follows:

> At or around 3:10 A.M. on August 8, 2004, Defendant Grabiak specifically spoke on the phone with Major Paul E. Lanzillota ("Major Lanzillota"), the Plaintiff's battalion commander, notifying the Plaintiff's superiors that the Plaintiff was being charged with public intoxication and disorderly conduct.

> Defendant Grabiak became extremely irritated when Major Lanzillota stated to Defendant Grabiak that the Plaintiff sounded sober on the phone.

> In accordance with Military protocol, Major Lanzillota contacted Colonel Gregg Potter, the Plaintiff's Brigade Commander.

> The Defendants acted negligently, recklessly, callously, and/or maliciously by notifying army personnel at Fort Meade of the Plaintiff's arrest and of the Plaintiff's alleged public intoxication, disorderly conduct, and "uncooperative" behavior.

(Compl. ¶¶ 22-25.)

On or about August 10, 2004, Defendant Grabiak filed two citations on the Plaintiff for public intoxication and disorderly conduct at District Justice Mark Blair's office in Uniontown, Pennsylvania. However, immediately upon filing the citations, Grabiak withdrew them. (Compl. ¶¶ 26-27.)

Plaintiff alleges that, on August 12, 2004, as a direct and proximate result of the Defendants' actions, he received a formal administrative reprimand from the Army, the only reprimand in his military career, and that he was suspended from his position as Commander of Bravo Company, 310th Military Intelligence Battalion, 902d Military Intelligence, and subsequently he was permanently relieved of this command. He further alleges that he was forced to sign in and out on a daily basis and provide appointment slips or proof of appointments to account for his whereabouts; that he was forced to endure humiliating and degrading assignments such as moving cinder blocks, separating trash from a dumpster and escorting repair

4

crews around the building which officed his former command; and that he was deprived of

career-advancing opportunities such as attendance at Officer Professional

Development/Leadership sessions, advantageous work assignments, promotions and vital

transfers.  (Compl. ¶¶ 28-33.)

      Plaintiff alleges that the Defendants, through the admissions of Defendant Sneddon, have

admitted that Grabiak should not have contacted Plaintiff's commander, that the situation was

not serious enough to warrant such an action and that he did not take the proper procedural steps

prior to doing so.  (Compl. ¶¶ 34-36.)  He further alleges that Defendant Grabiak has a poor

reputation as an officer and is known as "a very aggressive officer who often escalates situations,

where others might take a more measured approach," and "[h]e is known to stir things up."

(Compl. ¶ 38.)  Finally, he alleges that the Pennsylvania State Police have investigated

misconduct on the part of Uniontown City Police Officers prior to the incidents described in the

complaint.  (Compl. ¶ 39.)

      <u>Procedural History</u>

      Plaintiff filed this action on August 7, 2006.  Count I is brought pursuant to 42 U.S.C.

§ 1983 and raises the following claims under the United States Constitution: the First

Amendment (free speech and the right to be free from retaliation for exercising constitutionally

protected rights), Fifth Amendment (exercising his right to remain silent) and Fourteenth

Amendment (procedural and substantive due process).  Count II alleges claims of intentional

infliction of emotional distress, tortious interference with a business contract, negligence, gross

negligence, negligent hiring/training/supervision and retention under the law of the

Commonwealth of Pennsylvania, as well as violations of certain rights guaranteed under the

5

Pennsylvania Constitution.

On November 13, 2006, Defendants filed an answer to the complaint (Docket No. 5).  On February 20, 2007, Plaintiff filed a motion for partial judgment on the pleadings.  He argues that: 1) Defendants have admitted that they were acting under color of state law and that they placed the phone call to his battalion commander and thus they have conceded all the elements of his claims of denial of procedural and substantive due process; and 2) similarly, they have conceded that they committed an abuse of process by their actions, which were taken primarily to accomplish a purpose for which they were not designed.

Standard of Review

A motion for judgment on the pleadings is treated in the same manner as a motion to dismiss for failure to state a claim upon which relief may be granted.  The court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the ... nonmoving party.  Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001) (citing Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1004 (3d Cir. 1991)).  The motion cannot be granted unless the court is satisfied that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Id.  See Consolidated Rail Corp. v. Portlight, Inc., 188 F.3d 93, 96 (3d Cir. 1999). In reviewing the motion, the Court may refer to any documents attached to the complaint and matters of public record.  Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

Count I: § 1983 Claims

In Count I, Plaintiff alleges that Defendants' actions violated his rights under the First,

Fifth and Fourteenth Amendments.  In the present motion, he contends that Defendants have

admitted all of the elements of and seeks judgment in his favor on his Fourteenth Amendment

claims of procedural and substantive due process.  Defendants respond that: 1) they have not

admitted that Plaintiff was denied a property or liberty interest without due process of law and

the facts admitted by the pleadings do not establish that any of the Defendants made any false

public statements concerning the Plaintiff, that he was terminated from his employment or

suffered injuries sufficient to establish a due process claim or that they can be held liable for

employment actions taken by the United States Army, and the "badge of infamy" cases upon

which Plaintiff relies are inapplicable; and 2) they have not admitted the elements of his

substantive due process claim and the law is clear that public employment is not recognized as a

"fundamental protected property interest" entitled to substantive due process protection.

> Section 1983 of the Civil Rights Act provides as follows:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or any other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  Thus, to establish a claim under this statute, "a plaintiff must demonstrate a

violation of a right protected by the Constitution or laws of the United States that was committed

by a person acting under color of state law."  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)

(en banc).  The Supreme Court has held that "in any action under § 1983, the first step is to

identify the exact contours of the underlying right said to have been violated."  County of

Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).  However, "[c]ertain wrongs affect more

than a single right and, accordingly, can implicate more than one of the Constitution's

commands.  Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character.  Rather, we examine each constitutional provision in turn."  <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 70 (1992).

The Fourteenth Amendment provides that "states shall not deprive any person of life, liberty, or property, without due process of law...."  U.S. Const. Amend. XIV.  Plaintiff alleges that Defendants' actions deprived him of procedural and substantive due process with respect to his liberty interest in his reputation and his property interest in his employment.  He contends that Defendants have admitted all of the elements of these claims and that judgment should be entered in his favor.

<u>Procedural Due Process Claim: Property Interest</u>

The Supreme Court has stated that:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  When protected interests are implicated, the right to some kind of prior hearing is paramount.  But the range of interests protected by procedural due process is not infinite.

<u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972) (footnote omitted).  "Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...."  <u>Id.</u> at 577.  "Whether a person has a legitimate entitlement to–and hence a property interest in–his government job is a question answered by state law."  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 234 (3d Cir. 2006) (citing <u>Elmore v. Cleary</u>, 399 F.3d 279, 282 (3d Cir. 2005)).

In the <u>Hill</u> case, a Borough Manager (Hill) brought suit after the mayor of the Borough

8

(Marino) defamed and harassed him and other employees in retaliation for his reporting of
Marino's harassment and for positions that Hill took that were contrary to Marino's, culminating
in the workplace becoming so intolerable that Hill had no choice but to resign.  He alleged that
Marino's campaign of harassment, defamation and retaliation violated his rights to, inter alia,
procedural and substantive due process.  The district court granted the defendants' motion to
dismiss the federal law claims and declined to exercise jurisdiction over the pendent state
common law claims.

   The Court of Appeals concluded that Hill failed to state a claim for deprivation of his
right to retain his job without due process because this interest was not encompassed within the
Fourteenth Amendment's protection of property.  Under Pennsylvania law, Hill was an at-will
employee and therefore he "lacked a property interest in retaining his position as Borough
Manager that was sufficient to trigger due process concerns."  Id. (citation omitted).

   In this case, Defendants admit that Sneddon, Grabiak and Garrow were acting in their
capacities as police officers of the City of Uniontown.  (Answer ¶ 9.)  They have also admitted
that Defendant Grabiak made the phone call to Plaintiff's commander.  (Answer ¶ 22.)  However,
Plaintiff has not alleged–and therefore Defendants have not admitted in their answer–that he has
a protected property interest in his employment under Pennsylvania law.  Moreover, Plaintiff has
not been deprived of his job in any event.  Rather, he alleges only that he has suffered certain
adverse employment actions (he received an administrative reprimand and a suspension, was
forced to account for his whereabouts, was assigned humiliating tasks, was denied promotions
and transfers).  Defendants have denied that such actions occurred and stated that, assuming they
did, any such consequences were "the direct and proximate result of Plaintiff's own misconduct

and actions, and not the result of the conduct of these Defendants."  (Answer ¶¶ 28-33, 40-43.)

Thus, they have not admitted that he was deprived of a protected property interest without due

process of law and Plaintiff has not demonstrated that he is entitled to judgment on the pleadings

with respect to this claim.

Procedural Due Process Claim: Liberty Interest

Plaintiff also alleges that Defendants' actions denied him procedural due process with

respect to his liberty interest in his reputation.  Defendants contend that the pleadings in this case

do not establish a claim for denial of a liberty interest.

Plaintiff contends that Defendants' actions placed a "badge of infamy" upon him.  See,

e.g., Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("Where a person's good name,

reputation, honor, or integrity is at stake because of what the government is doing to him, notice

and an opportunity to be heard are essential.")  However, the Supreme Court has explained that

the phrase "what the government is doing to him" in Constantineau "referred to the fact that the

governmental action taken in that case deprived the individual of a right previously [recognized]

under state law...."  Paul v. Davis, 424 U.S. 693, 708 (1976).  The Court "has never held that the

mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient

to invoke the guarantees of procedural due process absent an accompanying loss of government

employment."  Id. at 706 (footnote omitted).

"Defamation, by itself, is a tort actionable under the laws of most States, but not a

constitutional deprivation."  Siegert v. Gilley, 500 U.S. 226, 233 (1991).  In that case, the

plaintiff (Siegert) was a clinical psychologist whose former supervisor (Gilley) responded to a

request from the Army, pursuant to a requirement that he be "credentialed" to work in one of

10

their hospitals, by writing a letter in which he referred to Siegert as "inept and unethical" and "the least trustworthy individual I have supervised."  Siegert alleged that Gilley's letter cost him his job, caused him to be turned down for another position, to lose his credentials, and to have his federal service employment terminated, and rendered him unable to obtain employment in the field.  He brought an action against Gilley for infringement of his liberty interest.  But the Supreme Court held that Siegert failed to identify any constitutional right that was violated because the defamation was not uttered incident to his termination and because damage to his reputation, even with accompanying impairment of future employment opportunities, did not state a cause of action protected by the Constitution.  Id. at 233-34.

In the Hill case, the plaintiff alleged a procedural due process claim for harm to his liberty interest in his reputation and ability to earn a living in his chosen profession as a result of Marino's defamatory statements made in the process of constructively discharging him.  The district court had concluded that, because Hill was defamed in the course of being constructively discharged from a job in which he lacked a protected property interest, he could not state a claim for deprivation of a liberty interest either.  The Court of Appeals disagreed, stating that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  Id. at 236 (citing Paul v. Davis, 424 U.S. at 701).  The court refers to this as the "stigma-plus" test.

The court explained that:

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest.  Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).  The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."  When

11

such a deprivation occurs, the employee is entitled to a name-clearing hearing.

> To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s)(1) were made publicly, <u>Bishop v. Wood</u>, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); <u>Chabal v. Reagan</u>, 841 F.2d 1216, 1223-1224 (3d Cir. 1988); <u>Anderson v. City of Philadelphia</u>, 845 F.2d 1216, 1222 (3d Cir. 1988), and (2) were false. <u>Codd</u>, 429 U.S. at 627-629, 97 S.Ct. 882; <u>Fraternal Order of Police v. Tucker</u>, 868 F.2d 74, 82-83 (3d Cir. 1989).

<u>Id.</u> (footnote omitted).  Hill alleged that Marino defamed him by accusing him of wrongdoing, that the accusation were false, that they were made publicly and that they tarnished his reputation and subjected him to scorn and ridicule.  Thus, the court concluded that he sufficiently alleged the "stigma" prong of the "stigma-plus" test.  <u>Id.</u> at 236-37.

The court concluded that Hill also met the "plus" element in that he alleged that he was defamed in the course of being constructively discharged, even if, as a matter of state law, he lacked a property interest in the job he lost.  <u>Id.</u> at 237-38.  The court therefore reinstated Hill's procedural due process claim for deprivation of his liberty interest in his reputation to the extent that the claim sought a name-clearing hearing (and certain other claims under the First Amendment, ADEA and PHRA) and remanded the case to the district court.[2]

However, as the court noted in <u>Hill</u>, it had previously

> held that the deprivation the plaintiff suffered along with stigma to his reputation was not sufficiently weighty to satisfy the "plus" requirement ... because the plaintiff did not lose his job, and instead complained about some adverse employment action less drastic than discharge.  <u>See</u> <u>Edwards [v. California Univ. of Pa.]</u>, 156 F.3d [488,] 492 [(3d Cir. 1998)] (plaintiff was suspended with pay, but was not fired); <u>Kelly [v. Borough of Sayreville, N.J.]</u>, 107 F.3d [1073,] 1077-1078 [(3d Cir. 1997)] (plaintiff was reprimanded and disciplined, but was never suspended, removed, fined or reduced in rank); <u>Clark [v. Township of</u>

---

[2]     The court noted that it was not called upon to decide whether a plaintiff who prevails on a "stigma-plus" claim may be entitled to remedies other than a name-clearing hearing.  <u>Id.</u> at 236 n.15.

Falls], 890 F.2d [611,] 617-620 [(3d Cir. 1989)] (plaintiff's duties were changed, but he did not lose his job, and neither his grade nor his pay was lowered); Robb [v. City of Philadelphia], 733 F.2d [286,] 294 [(3d Cir. 1984)] (plaintiff was transferred and denied a promotion, but remained employed by the City of Philadelphia at the same classification level and pay scale that he had previously had). See also Versarge [v. Township of Clinton, N.J.], 984 F.2d [1359,] 1370-1371 [(3d Cir. 1993)] (plaintiff lost job as firefighter, but job was only a volunteer position to begin with).

Id. at 238.

In this case, Plaintiff has not alleged that he was discharged from his job, and Defendants have not admitted that he was. Rather, he alleges only certain adverse employment actions, as did the plaintiffs in the Edwards, Kelly, Clark and Robb cases. The Court of Appeals concluded in all of these instances that such circumstances did not rise to the level of the "plus" required to state a claim for a "stigma-plus" injury. See also Ersek v. Township of Springfield, 102 F.3d 79, 83 n.5 (3d Cir. 1996) (assuming, without deciding, that demotion in rank is a sufficient "plus"). Thus, the pleadings in this case do not establish that Plaintiff suffered the "plus" element of a "stigma-plus" injury.

Defendants also have not admitted that they made materially false public statements about Plaintiff. Thus, the pleadings also do not establish the "stigma" element of the claim.

Finally, as Defendants note, Plaintiff has not addressed a fundamental distinction between the facts of this case and the facts of the cases cited above: the identity of the defendant responsible for the action taken. In all of the Supreme Court and Third Circuit cases, a government employer defamed an employee in the process of taking an adverse action against him. Here, by contrast, Plaintiff has alleged that the named Defendants (the City of Uniontown, its police department and three individual officers) defamed him, which induced his employer (the United States Army) to take certain adverse employment actions against him. The

13

Defendants in this case were not in a position to take any adverse employment action against Plaintiff because they did not employ him and the entity that did (the Army, which is a governmental employer, although not a "state actor") is not named as a defendant in this case. Plaintiff has not cited (and this Court has not found) a single case in which the factual scenario described in this case was found to state a claim for procedural due process with respect to a liberty interest.

For all of these reasons, Plaintiff has not demonstrated that he is entitled to judgment on the pleadings with respect to his procedural due process claim relating to his liberty interest in his reputation.  Plaintiff's motion should therefore be denied.

Substantive Due Process Claim

The Supreme Court has held that the Due Process Clause "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  Substantive due process violations are actionable under § 1983.  Zinermon v. Burch, 494 U.S. 113, 125 (1990).

In the Hill case, with respect to Hill's substantive due process claim relating to his employment, the court stated as follows:

> To prevail on a substantive due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139-140 (3d Cir. 2000) (Alito, J.) (quotation marks and citation omitted).  Whether a property interest is protected for purposes of *substantive due process* is a question that is not answered by reference to state law.  Rather, for a property interest to be protected for purposes of *substantive due process*, it must be "fundamental" under the United States Constitution.  Id. at 140.  This court has held explicitly that public employment is not a fundamental right entitled to substantive due process

protection.  Id. at 142-143.

> To the extent Hill's substantive due process claim was based not only on loss of his job, but also on reputational injury that decreased his "ability to earn a living," it also fails.  See Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399-404 (3d Cir. 2000) (defamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim).

455 F.3d at 234 n.12.

As noted above, Plaintiff has not alleged that he was terminated from his employment, and Defendants have not admitted that he was.  Moreover, even if the pleadings established that he had been terminated, public employment is not a fundamental right entitled to substantive due process protection.  Thus, Plaintiff has not demonstrated that he is entitled to judgment as a matter of law with respect to his substantive due process claim.

Therefore, with respect to Count I of the Complaint, Plaintiff's motion for partial judgment on the pleadings should be denied.

Count II: State Law Claims

In Count II, Plaintiff alleges that Defendants' actions violated his rights under a number of laws of the Commonwealth of Pennsylvania, as well as violations of certain rights guaranteed under the Pennsylvania Constitution.  He contends that, in their answer, they concede all of the elements necessary to state a claim for abuse of process.  Defendants respond that: 1) the complaint does not allege a claim of "abuse of process"; 2) even if it did, the phone call was not an act of "process"; and 3) they have not admitted that the phone call was made primarily to accomplish a purpose for which it was not designed.

On March 26, 2007, Plaintiff filed an amended complaint that adds a claim of abuse of process.  Thus, Defendants' first argument for denial of Plaintiff's motion has been rendered

moot.  The Court need not address the second argument because, even assuming that the placing

of the phone call to Plaintiff's commander constituted an act of "process," Defendants have not

conceded that they did so primarily to accomplish a purpose for which it was not designed.  They

contend that Plaintiff would not be calmed, despite the efforts of his brother, that they asked him

if he wanted another family member present and he said no, and that, in an effort to calm him

down, they contacted his commander.

> As summarized by the Court of Appeals:
>
>> The Supreme Court of Pennsylvania has said that "[t]he gist of an action
>> for abuse of process is the improper use of process after it has been issued, that is,
>> a perversion of it."  McGee v. Feege, 517 Pa. 247, 535 A.2d 1020, 1023 (1987)
>> (citing Mayer v. Walter, 64 Pa. 283 (1870)); see also Morphy v. Shipley, 351 Pa.
>> 425, 41 A.2d 671, 674 (1945) ( "'An abuse is ... a perversion of [legal process].'"
>> (quoting Mayer, 64 Pa. at 286)).  A "perversion" of legal process occurs when a
>> party uses the process "primarily to accomplish a purpose for which the process
>> was not designed."  Dumont Television & Radio Corp. v. Franklin Elec. Co. of
>> Phila., 397 Pa. 274, 154 A.2d 585, 587 (1959).  Generally speaking, to recover
>> under a theory of abuse of process, a plaintiff must show that the defendant used
>> legal process against the plaintiff in a way that constituted a perversion of that
>> process and caused harm to the plaintiff.  See Hart v. O'Malley, 436 Pa. Super.
>> 151, 647 A.2d 542, 551 (1994); Rosen v. Am. Bank of Rolla, 426 Pa. Super. 376,
>> 627 A.2d 190, 192 (1993).

General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003).

> The court noted that:
>
>> "The significance of [the word 'primarily'] is that there is no action for
>> abuse of process when the process is used for the purpose for which it is intended,
>> but there is an incidental motive or spite or an ulterior purpose of benefit to the
>> defendant."  Rosen, 627 A.2d at 192 (quoting Restatement (Second) of Torts,
>> § 682, cmt. b).

Id. at 305 n.2.  In that case, the plaintiff alleged that the defendants used discovery and litigation

process for five different purposes: harassment, draining resources, delaying litigation and

avoiding payment under an insurance policy.  The court concluded that the first four of these

16

purposes, "if severe enough, could constitute perversions of the legal process." Id. at 308.

However, the purpose of avoiding payment under an insurance policy could not constitute abuse

of process because that was the goal of the litigation from the defendant's point of view. Id. at

309.

In this case, it is doubtful that, even drawing all inferences in Plaintiff's favor,

Defendants' actions could constitute abuse of process. See Marable v. West Pottsgrove

Township, 176 Fed. Appx. 275, 281-82 (3d Cir. 2006) (granting summary judgment for police on

abuse of process claim arising out of plaintiff's arrest following his behavior upon seeing his

father arrested and noting that the events were "far removed from the 'usual case' of abuse of

process, where legal process is employed for extortionate or coercive objectives.")

However, the Court is not called upon now to make this determination. With respect to

Plaintiff's motion for judgment on the pleadings, drawing all inferences in favor of Defendants as

the non-moving party, they have not admitted that the phone call to Plaintiff's commander was

made "primarily" for a purpose for which it was not designed.

In response to Plaintiff's allegations that Defendants retaliated against him for exercising

his rights by contacting his battalion commander at 3:10 in the morning (Compl. ¶¶ 21-22),

Defendants state as follows:

> The averments of Paragraph 21 are denied as stated. It is admitted that the
> Defendants contacted Fort Meade in an effort to calm Plaintiff down and gain his
> cooperation. Further, the Defendants only contacted Fort Meade as they were
> unable to obtain assistance from a family member. Plaintiff's brother refused to
> assist Plaintiff as Plaintiff was behaving in a drunken and uncooperative manner,
> and his brother left the police station. Further, when Plaintiff was asked whether
> he wished to contact another member of his family, he declined, referring to his
> father in profane terms. It is specifically denied that Defendants contacted Fort
> Meade for the reasons alleged in Paragraph 21. It is specifically denied that
> Plaintiff exercised his rights and/or that the Defendants retaliated against Plaintiff

17

for such an alleged exercise of constitutional rights.

The averments of Paragraph 22 are admitted in part and denied in part. It is admitted that Grabiak contacted Plaintiff's commander. It is denied that he did so for any improper, unlawful or malicious purpose. Defendants are without sufficient information or knowledge to form a belief as to the truth of the remainder of the averments of Paragraph 22.

(Answer ¶¶ 21-22.)

In response to Plaintiff's allegations that, on August 10, 2004, Defendant Grabiak filed two citations against him and immediately withdrew them (Compl. ¶ 27), Defendants state as follows:

The averments of Paragraph 27 are denied insofar as they purport to state or imply that Defendant Grabiak filed citations for malicious or improper purposes. By way of further response, the citations were issued to Plaintiff on August 8, 2004. The citations were filed with the District Justice's office as a matter of administrative procedure on August 10, 2004. Further, the citations were withdrawn by Sneddon with the express consent of Officer Grabiak after Plaintiff's brother Joseph Grimm met with Chief Sneddon and requested that they be withdrawn. Chief Sneddon and Officer Grabiak agreed to withdraw the citations as a matter of leniency.

(Answer ¶ 27.)

Defendants' position is that the phone call was made to calm Plaintiff down and obtain his cooperation, and Plaintiff has pointed to no authority suggesting that such goals are inappropriate for the police to pursue. Plaintiff alleges that Defendant Sneddon admitted that Grabiak should not have contacted Plaintiff's commander, that the situation was not serious enough to warrant such an action and that he did not take the proper procedural steps prior to doing so. (Compl. ¶¶ 34-36.) However, Defendants have denied these allegations (Answer ¶¶ 34-36). Therefore, with respect to the claim for abuse of process, Plaintiff's motion for judgment on the pleadings should be denied.

Plaintiff also appears to argue that he is entitled to judgment as a matter of law on his claims of denial of procedural due process with respect to his rights under the Pennsylvania constitution (although his motion and brief do not make this entirely clear).  Defendants argue that, to the extent he is seeking judgment on the pleadings with respect to these claims, his request should be denied because whether the right to seek damages for such an injury is not settled under Pennsylvania law and a number of federal district courts have concluded that no such right exists.

As an initial matter, it is noted that, with respect to Plaintiff's procedural due process claim for injury to his property interest in his employment, the same analysis applies as to this claim under the Fourteenth Amendment:  "A governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute."  Pipkin v. Pennsylvania State Police, 693 A.2d 190, 192 (Pa. 1997).  Thus, a plaintiff must point to a source in state law or a contract that provides a protected property interest in employment.  See, e.g., Upper Makefield Twp. v. Pennsylvania Labor Relations Bd., 753 A.2d 803 (Pa. 2002) (although Police Tenure Act protects officers from suspension, removal or reduction in rank except for certain enumerated causes, the Act specifically exempts probationary employees from this protection and therefore the plaintiff had no property interest when he was terminated while still on probationary status).

As explained above, Plaintiff has not alleged that he has a protected property interest in his employment, nor has he alleged that he was terminated from his employment.  Defendants have not admitted these non-alleged facts and therefore Plaintiff is not entitled to judgment as a matter of law with respect to his claim of denial of procedural due process regarding his property

19

interest in his employment.

Plaintiff correctly observes that reputation is an interest protected under Pennsylvania law without a connected property interest in employment, as is required to state a claim under the United States Constitution.  The Pennsylvania Supreme Court has stated that

> in Pennsylvania, reputation is an interest that is recognized and protected by our highest state law: our Constitution. Sections 1 and 11 of Article I make explicit reference to "reputation," providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection.

R. v. Commonwealth Dep't of Public Welfare, 636 A.2d 142, 149 (Pa. 1994).

However, Defendants have not admitted that they abridged Plaintiff's interest in his reputation.  Contrary to Plaintiff's suggestion in his brief, they have not admitted that they informed his commanding officer that he was being charged with public intoxication and disorderly conduct, only that they made a phone call for the purpose of calming him down and gaining his cooperation.  Moreover, even if they made such statements (and assuming that this fact stated a claim for injury to his reputation), Plaintiff has not demonstrated that he is entitled to judgment as a matter of law with respect to this claim.  See R. v. Dep't, 636 A.2d at 149 (next step, after finding a protected interest in reputation, is to assess the extent to which the plaintiff will be deprived of that interest).

In addition, as Defendants note:

> Pennsylvania has no statute similar to 42 U.S.C. § 1983, which provides the cause of action for damages due to a federal constitutional violation, and the question of whether the Pennsylvania Constitution provides such a cause of action directly is not fully settled.  Although the Pennsylvania Constitution has been said to provide for an action for injunctive relief to enforce its equal rights provisions, see, e.g., R. v. Commonwealth, 535 Pa. 440, 460-63, 636 A.2d 142, 152-53 (1994); Erdman v. Miller, 207 Pa. 79, 90, 56 A. 327, 331 (1903); Hunter v. Port Auth., 277 Pa. Super. 4, 6-7, 419 A.2d 631, 632 (1980), there has been no such

holding as to an action for damages.

<u>Kaucher v. County of Bucks</u>, 2005 WL 283628, at *11 (E.D. Pa. Feb. 7, 2005), <u>aff'd on other grounds</u>, 455 F.3d 418 (3d Cir. 2006).  The court in <u>Kaucher</u> went on to cite numerous district court cases concluding that the Pennsylvania constitution does not provide a direct right to damages.  <u>Id.</u>  Given this state of the law, the Court would be reluctant to conclude that Plaintiff was entitled to judgment as a matter of law for his claims under the Pennsylvania constitution, for which he seeks damages rather than injunctive relief, even if the pleadings established all of the elements of these claims.

For these reasons, it is recommended that the motion for partial judgment on the pleadings submitted on behalf of Plaintiff (Docket No. 11) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: April 16, 2007